

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                      :

IMAGINE SOLUTIONS, LLC,            :      06 CV 3793 (ARR) (JMA)
                      :

           Plaintiff,        :      <u>NOT FOR PRINT</u>
                      :      <u>PUBLICATION</u>
  -against-               :
                      :      <u>OPINION AND ORDER</u>

MEDICAL SOFTWARE COMPUTER    :
SYSTEMS, INC., et al.,          :
                      :

           Defendants.    :
                      :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

On August 4, 2006, plaintiff Imagine Solutions, LLC ("Imagine" or "plaintiff") filed a
complaint in the instant case against defendants Medical Software Computer Systems, Inc.
("MSCS"), Dr. Craig R. Rudlin, Matthew Cowan, and Steven Jamison Woodson (collectively,
"defendants"). The complaint asserts claims for breach of contract, quantum meruit, fraud,
defamation, unjust enrichment, and a declaratory judgment of copyright ownership. By motion
dated October 23, 2006, defendants move to dismiss this action for lack of personal jurisdiction
and venue pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) or, in the alternative, for transfer of
venue to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). For the reasons set
forth below, defendants' motion is denied.

1

## BACKGROUND

The following relevant facts, which are either undisputed or alleged in plaintiff's complaint and affidavits, are deemed true for the purposes of this motion.[1] See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 27-28 (2d Cir. 1996).

Imagine Solutions, LLC is a Delaware corporation with its principal place of business in New York. (Compl. ¶¶ 1, 32; Arnold Decl. ¶ 1.) Medical Software Computer Systems, Inc. is a Virginia corporation with its principal place of business in Richmond, Virginia. (Compl. ¶ 2.) Steven Jamison Woodson, Matthew Cowan, and Dr. Craig R. Rudlin are residents of Virginia. (Comp. ¶¶ 3-5.) Messrs. Woodson and Cowan are, respectively, the President and Vice President of MSCS, and Dr. Rudlin was President and owner of MSCS until September 2005. (See Woodson Decl. ¶ 1, Cowan Decl. ¶ 1, Rudlin ¶ 1.)

Dr. Rudlin and Mr. Woodson developed a version of an electronic medical records software system called "Dr. Know" and, as of 1998, had been unsuccessful in their attempts to market and develop this version of the software. (Compl. ¶ 9, 10.) In 1998, Dr. Steven Arnold met Dr. Rudlin while living in Virginia and, over a twelve-month period, they discussed developing a commercially viable version of Dr. Know. (Arnold Decl. ¶ 9, 10.) Dr. Arnold moved to New York in 1999, after which he began conversations with Dr. Rudlin and Mr. Woodson, in their personal capacities and on behalf of MSCS, and two other individuals, Mitchell Levey and Greg Lueck, regarding development and marketing of an improved version of Dr. Know (the "System"). (Id. ¶¶ 11-12.) In 2002, these parties agreed to form a joint venture

---

[1]By order dated April 10, 2007, the court ordered plaintiff to file supplemental evidentiary submissions with respect to venue. Relevant evidence received in response to that order will be reviewed separately when addressing venue, because it was only solicited for that limited purpose.

to develop the System and other products and to share profits and losses from the venture. (Id. ¶ 13.) The conversations regarding the formation of the joint venture took place via telephone communications between New York and Virginia and at one in-person meeting in Richmond, Virginia. (Id. ¶ 14.)

After the joint venture was formed, Dr. Rudlin represented that he had conveyed title of the first version of the System to the Craig R. Rudlin Charitable Remainder Unitrust (the "Unitrust") and made the Trustees of Princeton University the Unitrust's trustees. (Compl. ¶ 15.) Dr. Rudlin represented that he was the beneficial owner of the System's first version under the Unitrust and that he was contributing his interest to the joint venture. (Id. ¶ 16.) He also represented that, upon his approval, the Unitrust would sell its interest to the joint venture. (Id.)

To facilitate the operations of the joint venture, the parties frequently communicated via e-mail and telephone. Between 2002 and January 2006, hundreds of e-mails were exchanged between Dr. Rudlin, Mr. Woodson, and/or Mr. Cowan in Virginia and Dr. Arnold and/or Mr. Levey in New York. (Arnold Decl. ¶ 18(a).) The parties also spoke almost daily by telephone. (Id.) Financial investments by Dr. Arnold and Mr. Levey were made payable to MSCS and sent by check to Virginia. (Arnold Decl. ¶ 15; Compl. ¶ 20.) On one occasion, a check for $10,000 payable to MSCS was given to Dr. Rudlin in New York. (Arnold Decl. ¶ 20(g).) The purpose of the funds included paying for the expenses of MSCS and the services of Dr. Rudlin and Messrs. Woodson and Cowan. Dr. Arnold also arranged for MSCS to receive an AmeriChoice grant, which included financing for Dr. Rudlin and Mr. Woodson to travel to New York. (Id. at ¶ 20(g) & n.10.) In approximately fall of 2004, the parties to the joint venture agreed to form a limited

liability company, Imagine, which was to purchase the first version of the Dr. Know system. (Compl. ¶ 23.)

In 2003, the joint venture began pilot testing, or beta testing, the System at the offices of six Brooklyn physicians as a step toward enhancing the commercial viability of the product. (Id. ¶ 8.) To facilitate the beta testing, MSCS shipped the requisite hardware to New York and the physicians paid MSCS for the hardware, including a 10 percent markup from cost. (Id. n.9.) In 2003, MSCS entered into an arrangement with an additional Brooklyn physician for implementation and installation of the System and was paid $1000 to $1500 for these services. (Id. ¶ 18(d).) Dr. Rudlin and Messrs. Cowan and Woodson traveled to New York on six, fourteen, and six occasions, respectively, in order to install and maintain the System at the beta testing sites. (Woodson Decl. ¶ 10; Cowan Decl. ¶ 10; Rudlin Decl. ¶ 10.) Each visit lasted for a period of several days to more than a week. (Arnold Decl. ¶ 18(c).). In November 2004, Dr. Rudlin arranged to rent an apartment in Brooklyn, which was used by MSCS, Dr. Rudlin and Messrs. Cowan and Woodson on their visits. (Id. ¶ 18(e).) In summer 2003, MSCS and Dr. Rudlin agreed to pay Mr. Lueck for assistance in resolving problems encountered with the System's installation at one of the Brooklyn physician's offices. (Id. ¶ 18(h).) In late 2004, MSCS and Dr. Rudlin hired an additional individual to assist with training at another Brooklyn physician's office. (Id. ¶ 18(i).) The beta testing was completed in 2005, but MSCS continues to support maintenance of the System at the beta testing sites and has sent individuals on behalf of MSCS to the offices of at least two of the Brooklyn physicians to assist with technical support. (Id. ¶ 18(n); Herard Decl. ¶ 7; Odeh Decl. ¶ 8.)

MSCS and Dr. Rudlin also worked with the New York City Department of Health to enable the System to communicate with the Immunization and Communicable Disease Registries. In approximately 2004, Dr. Rudlin and Mr. Woodson traveled to New York to provide a demonstration of the System to the Department of Health in Manhattan. (Arnold Decl. ¶ 19(j).) Dr. Rudlin and Mr. Woodson subsequently communicated by telephone with the Information Technology Department of the Department of Health to facilitate this arrangement. (Id.)

Dr. Rudlin and Mr. Woodson were involved in activities of the joint venture to secure additional purchasers of the System in New York. In spring 2004, Dr. Rudlin and Mr. Woodson met with three physicians and a potential new investor in New York to demonstrate the System. (Id. ¶ 18(l).) Defendants also assisted remotely in the planning and implementation of demonstrations to other potential purchasers. (Id. ¶ 18(m).) Defendants were involved in negotiations with Liberty Health Advantage ("Liberty Health"), a company that was based at the time in Garden City, New York. (Id. ¶ 18(p).) In November 2005, Liberty Health indicated its willingness to enter into an agreement with Imagine for delivery of the System to 500 physician members of their network, a contract worth more than $1 million. (Id.)

In fall 2005, the defendants notified Dr. Arnold and Messrs. Levey and Lueck that they no longer wished to go forward with the joint venture. (Compl. ¶ 29.) In December 2005, the defendants indicated that they would not participate in finalizing the contract with Liberty Health or any other business arrangement with Dr. Arnold and Messrs. Levey and Lueck. (Id. ¶ 29.) Defendants subsequently attempted to negotiate directly with Liberty Health. (Id.) In approximately January 2006, MSCS terminated all relations with Imagine. (Id. ¶ 31.) Dr.

5

Arnold and Messrs. Levey and Lueck assigned their rights to any cause of action against defendants to Imagine. (Id. ¶¶ 32.) The instant suit was subsequently initiated.

## DISCUSSION

### I. Personal Jurisdiction

When responding to a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). "Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" Id. (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). "[A]ll pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

In diversity cases, the court's ability to exercise personal jurisdiction over the defendants is determined by the law of the forum state. See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). Likewise, the forum state's rules of personal jurisdiction apply in federal question cases, unless the applicable federal statute provides for nationwide service of process. See Sunward Elecs. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) Here, plaintiff relies on both diversity and federal question grounds to establish federal subject matter jurisdiction. (See Compl. ¶ 7.) The federal statutes cited in plaintiff's complaint—the Copyright Act, 17 U.S.C. § 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 &

2202—do not provide for nationwide service of process. Therefore, New York law governs the court's exercise of personal jurisdiction over the defendants in the instant action.

## A.     General Jurisdiction

The first ground for personal jurisdiction asserted by plaintiff is N.Y. C.P.L.R. § 301, which provides for jurisdiction over a defendant "doing business" in New York. See Hoffritz for Cutlery, Inc., 763 F.2d 55, 58 (2d Cir. 1985). Under this provision, "[a] non-domiciliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and systematic course of doing business in New York." Id. The test is "a simple pragmatic one" that examines the defendant's activities in the state in the aggregate to determine whether it can be said to be present in the state "not occasionally or casually, but with a fair measure of permanence and continuity." Laufer v. Ostrow, 55 N.Y.2d 305, 310 (N.Y. 1982) (internal citations and quotations omitted). Satisfying this standard requires plaintiff to show that the defendant "engaged in 'continuous, permanent, and substantial activity in New York.'" Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (quoting Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)). Indicia of jurisdiction that have typically been considered by New York courts include the existence of an office, the solicitation of business, the presence of bank accounts or other property, and the presence of employees or agents in the state. Landoil v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1991). For the purposes of § 301 jurisdiction, the defendant must have been doing business in the state at the time the action was commenced. See Jacobs v. Felix Floch Erben Verlag, 160 F. Supp. 2d 722, 726 n.5 (2d Cir. 2001); see also Lancaster v. Colonial Motor Freight Line, Inc.,177 A.D.2d 152, 156 (N.Y. App. Div. 1st Dep't 1992).

Plaintiff has failed to show a sufficient presence of MSCS in New York to make a prima facie case for general jurisdiction. MSCS is not registered to do business in New York, does not have a New York bank account, and does not maintain an office in the state. At one point in time, the corporation rented an apartment in the state, but no showing has been made that suggests it continued to do so at the time the complaint was filed. While the corporation has, on occasion, contracted with individuals to perform particular services in the state, MSCS does not have any permanent employees based in the state. Although MSCS established contractual relationships with the offices of physicians in the state for the purpose of beta testing the System, the limited duration and number of beta testing sites mean that these activities were neither permanent nor substantial within the meaning of § 301. The maintenance work that MSCS continues to perform at these sites subsequent to completion of the beta testing is an insufficient form of contact for the court to find that MSCS is functionally present in the state. MSCS's solicitation of business in the state has been limited in scope. Consequently, plaintiff has failed to show that MSCS is subject to the court's jurisdiction under § 301.

Plaintiff has also failed to make a sufficient showing of general jurisdiction with regard to the individual defendants. Although an individual does not subject himself to § 301 jurisdiction by doing business on behalf of a corporation, there may be jurisdiction under this provision for an individual doing business in New York on his own behalf. See Laufer v. Ostrow, 55 N.Y.2d 305, 313 (N.Y. 1982). Defendants allege that the individual defendants' business-related contacts in New York were solely in their capacity as officers of MSCS and therefore claim that they are not subject to general jurisdiction in the state. The court does not need to resolve this question, because even assuming, arguendo, that the individual defendants performed work in

8

New York in their individual capacities, plaintiff has not made a prima facie case that such work was sufficient to constitute doing business in New York. It appears that the individual defendants' primary contact with the state at the time the complaint was filed was maintenance of the System at the beta testing sites. As discussed above, contacts and sporadic visits for this purpose are insufficient to warrant a finding of general jurisdiction.

### B.    Long-Arm Jurisdiction

Plaintiff also asserts that personal jurisdiction over defendants exists under New York C.P.L.R. § 302(a), the pertinent part of which provides for jurisdiction over "any non-domiciliary . . . who in person or through an agent . . . (1) transacts any business within the state . . . ." N.Y. C.P.L.R. § 302(a)(1). "For a court to exercise jurisdiction under this provision, the claim must 'arise from' the transaction of business within the state." Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58-59 (2d Cir. 1985)). To satisfy this requirement, there must be "'some articulable nexus between the business transacted and the cause of action sued upon.'" Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272 (N.Y. 1981).)

It is well settled that a party need not be physically present in New York to "transact business" here. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999) (citing Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 16, 308 N.Y.S.2d 337 (N.Y. 1970)). Rather, a nonresident is subject to jurisdiction under § 302(a)(1) if he "has purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." Id. No one contact or event is dispositive; instead, the

9

court looks to the totality of the circumstances in determining whether jurisdiction exists. See Agency Rent A Car, 98 F.3d at 29, CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

### 1. MSCS

While MSCS's contacts with the state of New York were not continuous or systematic enough to satisfy the requirements of general jurisdiction under § 301, the court finds that plaintiff has made the required showing of jurisdiction under § 302(a)(1). Plaintiff has alleged a significant number of facts illustrating that MSCS transacted business in New York. In particular, according to plaintiff, MSCS entered into a business arrangement with individuals in New York and, in furtherance of that arrangement, principals of the corporation communicated on a daily basis with parties in New York by telephone, conference call, and e-mail and traveled to New York on a total of 26 occasions over a three-year period. MSCS also accepted funds from New York sources to support its activities and travel to the state. Moreover, MSCS purposely availed itself of opportunities in New York by entering into contractual arrangements with offices of Brooklyn physicians to serve as sites for beta testing the System, accepting payments from and sending hardware to the sites, and installing and maintaining the System at the sites through in-person visits and remote assistance. In fact, the number and duration of the visits of MSCS's representatives to the state necessitated renting an apartment in Brooklyn for a period of time. In addition, MSCS worked with the New York City Department of Health to make the System compatible with the city's databases and, on several occasions, was involved in soliciting business in the state.

Although many of MSCS's contacts with the state were remote, the advanced state of communications technology means that whether the defendant personally visited New York is of

10

decreasing significance. See ADP Investor Comm. Svcs. v. In House Att'y Svcs., 390 F. Supp. 2d 212, 220 (S.D.N.Y. 2005) (citing Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 30 (2d Cir. 1996)). In addition, the fact that the alleged contract was not negotiated or executed in New York is not dispositive. See Hoffritz, 763 F.2d at 60-61; see also Galgay v. Bulletin Co., 504 F.2d 1062, 1064 (2d Cir. 1974) ("the inquiry to be made in a section 302 case is whether, looking at 'the totality of the defendant's activities within the forum,' purposeful acts have been performed in New York by the foreign corporation in relation to the contract, 'albeit preliminary or subsequent to its execution.'") (quoting Longines-Wittnauer Watch Co., Inc. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457 & n.5 (N.Y. 1965)). Accordingly, when viewed in aggregate, MSCS's activities in New York more than suffice to show that MSCS transacted business in New York.

Defendants contend that there is not a sufficient nexus between MSCS's activities in the state and plaintiff's causes of action for the court to find jurisdiction under § 302(a)(1). In particular, defendants argue that MSCS's contacts with the state of New York were limited to beta testing and plaintiff's causes of action arise out of an alleged oral contract rather than the beta testing. However, this position is not persuasive. As described above, MSCS's business connections with New York extended significantly beyond beta testing and included the negotiation, planning and implementation of an alleged joint venture with individuals in New York. Each of plaintiff's causes of action—breach of contract, quantum meruit, fraud, defamation, unjust enrichment, and copyright ownership—directly relates to this alleged agreement. Moreover, plaintiff has asserted that the beta testing arrangement was a significant step in enhancing the commercial viability of the Dr. Know system and was therefore a key part

11

of any business arrangement that existed. This is sufficient to make a prima facie case that

MSCS's contacts with the state in furtherance of the beta testing have the required nexus with

plaintiff's claims. Consequently, plaintiff's allegations demonstrate the requisite substantial

relationship between defendant MSCS's business transactions in New York and each of the

causes of action in the instant litigation to establish personal jurisdiction over MSCS under §

302.

### 2.    Dr. Rudlin and Messrs. Woodson and Cowan

Plaintiff has also made a sufficient showing that each of the individual defendants are

subject to the court's jurisdiction for each cause of action under § 302. Dr. Rudlin and Mr.

Woodson were involved in the alleged joint venture from its inception and directed or were

involved in each of the activities attributed to MSCS in the preceding section. Whether they did

so personally or on behalf of MSCS is irrelevant, as New York has not adopted the fiduciary

shield doctrine to shield an individual from long-arm jurisdiction of the court when his actions in

the state were on behalf of a corporation. See Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460,

470 (N.Y. 1988). Mr. Cowan joined the alleged venture later, but, according to the evidence

submitted by the plaintiff, he became substantially involved, traveling to New York on 14

occasions for installation and support of the System at the beta testing sites, participating in e-

mail and telephone conversations with the parties in New York, and soliciting business for the

System. For the purposes of the instant motion, these contacts suffice to show that Mr. Cowan

transacted business in the state of New York in furtherance of the alleged joint venture and that there was an articulable nexus between these transactions and plaintiff's causes of action.[2]

## C. Due Process

In order for a court's exercise of personal jurisdiction to comport with due process, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). In determining the existence of minimum contacts, the court must "consider[] 'the relationship among the defendant, the forum, and the litigation.'" Kernan v. Kurz-Hastings, 175 F.3d 236, 242 (2d Cir. 1999) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

In order to find specific jurisdiction over the defendant, the action against the defendant must arise out of and be related to the defendant's contacts with the forum.[3] See Metro. Life Ins.

---

[2] In support of their argument that there is an insufficient connection between defendants' actions in the state and plaintiff's causes of action, defendants raise three additional issues, namely (1) how plaintiff can state a claim for breach of contract against Mr. Cowan when he was not alleged to be a party; (2) how plaintiff can state a claim for fraud and defamation against Mr. Cowan based on representations by Dr. Rudlin and Mr. Woodson; and (3) how plaintiff can state a claim for unjust enrichment and quantum meruit against Dr. Rudlin and Messrs. Cowan and Woodson based on payments of money to MSCS. (Defs.' Reply Mem. 6-7.) The court does not reach any of these issues, as they relate to the merits of the instant action rather than the jurisdiction and venue issues presently before the court.

[3] Defendants assert that the appropriate test for specific jurisdiction in the due process context is that the defendants' contacts with the forum must be the proximate cause of plaintiff's cause of action. In support of this contention defendants cite Chew v. Dietrich, 143 F.3d 24 (2d Cir. 1997), for the proposition that, when the defendant's contacts with the forum state are limited, plaintiff's injury must have been proximately caused by these contacts. Id. at 29. However, this test was not expressly adopted by the Second Circuit and was referenced only with regard to tort actions with much more limited contacts with the forum state than the dispute presently before the court. See id. Accordingly, the court does not find this to be the appropriate test for analyzing whether defendants' contacts with the state of New York are sufficient to make the court's exercise of personal jurisdiction over defendants consistent with due process.

Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996). In such cases, the plaintiff must also show that the defendant "purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there." Kernan, 175 F.3d at 242-43 (internal citations and quotations omitted). In the second stage of the due process inquiry, the court must determine "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable under the circumstances of the particular case." Id. at 243 (internal citations and quotations omitted).

In this case, it is clear that there is specific jurisdiction over each of the defendants, because, as explained above, the suit arises out of their contacts with New York. That is, the suit arises out of the Virginia defendants' entry into the alleged joint venture agreement with individuals in the state of New York, an arrangement that included frequent communication, a number of visits to New York, a beta testing program in Brooklyn, and solicitation of additional purchasers of the joint venture's product in the state. Moreover, for the reasons set forth above, see supra (I)(B)(1), the court concludes that defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within [New York]." See Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Finally, the court must decide whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice. See Metro. Life Ins. Co., 84 F.3d at 568. The Second Circuit has identified five factors for the court to consider in deciding this question: (1) the burden that the assertion of jurisdiction will impose on the defendant, (2) New York's interests in adjudicating the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the

controversy, and (5) the shared interest of the states in furthering social policies. See id. When, as here, the plaintiff makes a showing of minimum contacts, the burden is on the defendant to make "'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

In this case, defendants contend that it is burdensome for them to litigate this dispute in New York when they are located in Virginia. Specifically, Mr. Woodson states that traveling is difficult for him because he has diabetes and limited financial means, making it more difficult to litigate the case remotely. (Woodson Aff. ¶¶ 12, 15.) Mr. Cowan likewise states that he has limited financial means. (Cowan Aff. ¶ 12.) Dr. Rudlin states that he has a solo practice as a pediatric endocrinologist and is regularly on call for the needs of his patients and would find it financially burdensome for the case to remain in New York. (Rudlin Aff. ¶¶ 19, 20.)

While the court recognizes that is no doubt more expensive and less convenient for defendants to defend the instant action in New York, that burden is somewhat eased by "the conveniences of modern communication and transportation." Metro. Life Ins. Co., 84 F.3d at 574. Moreover, despite the aforementioned health, financial, and employment-related constraints, each of the individual defendants managed to travel to New York relatively recently on at least six occasions for several days at a time to assist in the beta testing of the System. Mr. Cowan also visited the state twice on vacation. These facts suggest that occasional travel related to the instant litigation would not be unduly burdensome. On the other hand, New York has an interest in adjudicating the allegations of a corporation with its principal place of business in the state, there are relevant witnesses and evidence located in New York, and the plaintiff has a

strong interest in adjudicating its claims in New York. After weighing these considerations, it is clear that exercising personal jurisdiction over defendants does not offend traditional notions of fair play and substantial justice.

Therefore, for the reasons set forth above, the court holds that plaintiff has made the requisite prima facie showing that defendants are subject to the court's exercise of personal jurisdiction for the purposes of the instant action.

## II.     Proper Venue

Defendants also move pursuant to Fed. R. Civ. P. 12(b)(3) for dismissal of plaintiff's claims for improper venue. In the absence of an evidentiary hearing, plaintiff is required to make a prima facie showing of venue by its pleadings and affidavits. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). For the reasons explained below, the court finds that plaintiff has made the necessary showing that venue is proper in the Eastern District of New York.

### A.     Venue for State Law Claims Brought Under Diversity Jurisdiction

Plaintiff asserts that, as to the state law claims brought under diversity jurisdiction, venue is proper under 28 U.S.C. § 1391(a)(2), which provides, in relevant part, that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."[4] The Second Circuit has cautioned that the venue statute must be strictly construed, meaning that "significant events or omissions material to the plaintiff's claim

---

[4]As § 1391(a) applies to actions "wherein jurisdiction is founded only on diversity of citizenship," it appears that venue is properly analyzed under § 1391(b), which applies to actions predicated, in whole or in part, on federal question jurisdiction. However, the relevant standard under both sub-sections of the statute is the same, so this issue does not make any substantive difference to the court's decision.

must have occurred in the district in question." Gulf Ins. Co., 417 F.3d at 357. Determining whether venue is proper in a given district entails a two-step inquiry. First, the court "identif[ies] the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005). Second, the court determines "whether a substantial part of those acts or omissions occurred in the district where suit was filed." Id. at 432. In breach of contract cases, relevant considerations include "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." PI, Inc. v. Quality Prods., 907 F. Supp. 752, 757 (S.D.N.Y. 1995). The requirements of § 1391(a)(2) may be met by "a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." Sacody Technologies v. Avant, Inc., 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994).

Here, each of plaintiff's claims relates to an alleged breach of a joint venture agreement with MSCS and its principals to develop and market the Dr. Know system. In particular, plaintiff's claims primarily concern activities related to the formation of the joint venture agreement and breach of that agreement, most of which occurred via telephone and e-mail exchanges. Also relevant to plaintiff's claims are the activities that were undertaken in furtherance of the agreement, including communication related to implementation of the joint venture and activities related to the development of the System through beta testing.

Having reviewed the parties' supplemental submissions,[5] the court finds that plaintiff has made a prima facie case that a substantial part of the events giving rise to its claims occurred in the Eastern District of New York. Some of the communications related to the formation of the joint venture agreement took place over the telephone between Dr. Rudlin and either or both Messrs. Levey and Lueck at Mr. Levey's home in Nassau County. (See Arnold Supp. Decl. ¶ 10(b).) Further, a substantial number of the activities related to the implementation of the joint venture agreement took place in this district, including the installation and maintenance of the System at the beta testing sites in Brooklyn; telephone conversations and e-mail exchanges relating to the beta testing between Dr. Rudlin in Virginia and Mr. Levey in Nassau County; two in-person meetings with Dr. Rudlin and Mr. Woodson in Nassau County to discuss the progress of the joint venture; telephone conference calls between some or all defendants in Virginia, on one end, and Dr. Arnold and Mr. Levey, and occasionally Mr. Lueck, gathered together in Nassau County, on the other. (See Arnold Decl. ¶ 19; Arnold Supp. Decl. ¶ 10.) Further, defendants also participated in negotiations with potential purchasers of the System in this district, including negotiations relating to a $1 million contract with Liberty Health, a company then based in Nassau County. (See Arnold Decl. ¶ 19(p); McDonald Decl. ¶¶ 2, 4, & 5.) Finally, significant events relating to defendants' allege breach of the joint venture agreement took place in this district. According to plaintiff, after defendants indicated that they did not intend to honor the

_____

[5]Upon reviewing the parties' initial motion papers, the court observed that plaintiff did not make entirely clear whether a number of the events it alleged took place in New York took place in this district or another judicial district in the state. Following the Second Circuit's decision in Gulf Ins. Co., 417 F.3d at 357 & n.3, the court granted plaintiff leave to file an additional evidentiary submission clarifying which of the events or omissions on which it relied in opposing defendants' venue motion took place in this district.

joint venture agreement, they attempted to negotiate directly with Liberty Health and thereby caused it to withdraw from negotiations. (See Compl. ¶¶ 29-30.)

Although a significant portion of the events alleged also took place in the Eastern District of Virginia, where defendants are located, the court concludes that significant events material to plaintiff's claims took place in this district and, accordingly, venue is proper. Accord Blum v. Salomon, No. 06 Civ. 3149, 2006 WL 3851157, at *3 (S.D.N.Y. Dec. 28, 2006) (finding venue proper based on the plaintiff's location in New York while conducting some of the negotiations via telephone and e-mail for the Rhode Island property in dispute and his attempts to secure financing and retention of an attorney in New York); Largotta v. Banner Promotions, Inc., 356 F. Supp. 2d 388, 390-91 (S.D.N.Y. 2005) (holding venue to be proper based on the plaintiff's location in New York when he was negotiating the contract and his performance of his end of the contract in New York); Sacody Technologies v. Avant, Inc., 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (finding venue to be proper for breach of a confidentiality agreement where some of the defendants' dealings with the plaintiff took place via telephone and fax communications between Massachusetts and New York).

## B. Venue for Copyright Claim

Defendants also contend that venue is improper for plaintiff's claim seeking a declaration of copyright ownership under the Copyright Act, 17 U.S.C. §§ 101 et seq. The relevant venue statute provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Here, it is undisputed that none of the defendants resides in this district. However, "a defendant 'may be found' wherever that person is

amenable to personal jurisdiction." <u>CAVU Releasing, LLC. v. Fries</u>, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005) (internal citations and quotations omitted) (finding venue to be proper when the defendant was subject to long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(1)). Given that the court has already determined that each defendant is subject to personal jurisdiction in New York based on substantial contacts to this district, <u>see</u> <u>supra</u> Section I(B), venue for plaintiff's copyright claim is proper.

## III.    Transfer of Venue

Defendants have also moved, pursuant to 28 U.S.C § 1404(a), to transfer venue to the Eastern District of Virginia. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). Plaintiff does not dispute that this case could have been brought in the Eastern District of Virginia. To determine whether the interests of convenience and justice would be served by a transfer to that district, the court may consider the following factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

<u>Brozoski v. Pfizer, Inc.</u>, No. 00 Civ. 4215, 2001 WL 618981, *1 (S.D.N.Y June 6, 2001).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." <u>D.H.</u>

Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). Defendants, as the moving party, bear the burden of showing that a transfer is warranted. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978).

For the reasons given below, the court finds that the defendants have failed to meet their burden of demonstrating that the interests of justice and the convenience of the parties dictate that venue should be transferred.

### A.    Convenience of the Witnesses

"The factor to be given the most weight when deciding whether to transfer a case is the convenience of the material witnesses." Klein v. Sandoz Pharmaceuticals Corp., No. 95 Civ. 2150, 1996 WL 204495, *2 (E.D.N.Y. April 16, 1996). The witnesses identified by the parties include Dr. Steven Odeh, a resident of New York; Dr. Wilfred Herard, a resident of New York; Angie Woodson, a resident of Virginia; the Trustees of Princeton University, located in New Jersey; Kerry McDonald, a resident of New York; representatives of the New York City Department of Health; Innovative Solutions, located in New Jersey; and Columbia Consulting, which appears to be located in New York. Although the significance of each witness has not been made entirely clear, it appears that Dr. Odeh, Dr. Herard and Kerry McDonald may be in a position to offer relevant testimony. Defendants contend that Dr. Odeh and Dr. Herard could only testify regarding the existence of the beta testing, but this does not seem entirely accurate. Both state that they could testify as to representations made to them concerning the joint venture agreement. (See Odeh Decl. ¶ 6; Herard Decl. ¶ 5.) Given that the majority of the witnesses reside in the New York area, the convenience of the witnesses weighs in favor of the plaintiff.

21

## B.     The Availability of Process to Compel Attendance of Unwilling Witnesses

Two witnesses—Dr. Odeh and Dr. Herard—indicate that they are willing to testify in New York but not willing to do so in Virginia, where they would not be subject to the subpoena power. (See Odeh Decl. ¶ 9, Herard Decl. ¶ 8.) While the testimony of these witnesses does not appear to be critical to plaintiff's case, the perspective of the doctors participating in the beta testing appears to be useful and relevant for trial purposes. Accordingly, this factor weighs against transfer.

## C.     Convenience of the Parties

Each of the defendants resides in the Eastern District of Virginia. Two of the three members of Imagine, Dr. Arnold and Mr. Levey, reside in New York, and the other member, Mr. Lueck, is a Maryland resident. Defendants have pointed out that Dr. Arnold continues to maintain a home in Virginia, but that is not his primary residence. Defendants have also identified factors that make traveling more burdensome for them, namely cost, Dr. Rudlin's practice, and Mr. Cowan's diabetes. Given that Mr. Cowan has traveled to New York on 16 occasions in the past seven years (see Cowan Decl. ¶¶ 10-11), the court is not persuaded that his health problems would constitute an overwhelming burden. In addition, while the court recognizes that Dr. Rudlin's medical practice undoubtedly places strains on his availability and time, he was able to visit New York on six occasions for activities related to the beta testing. (See Rudlin Decl. ¶¶ 10.) However, plaintiff has not identified any barriers to travel for its members. Accordingly, the issue of convenience of the parties weighs in favor of transfer.

### D. The Locus of Operative Facts

Defendants' contention that "[a]ll of the critical events giving rise to this dispute occurred in Virginia" (Defs.' Mem. of L. 14) appears to be an overstatement. In support of this statement, defendants point out that the initial version of the software was developed in Virginia, the initial contact between Dr. Arnold and Dr. Rudlin was made in Virginia, and Imagine sent funds to MSCS in Virginia. (See id.) However, as discussed in the preceding section, see supra Section II(B), communications related to contract formation took place from this district as did significant events related to implementation and breach of the agreement. Given that relevant facts and evidence are in both districts, this factor weighs only slightly—if at all—in favor of transfer.

### E. The Relative Means of the Parties

Defendants allege that they have limited means relative to plaintiff. In support of this contention, they indicate that MSCS was created with limited capital for the purpose of developing Dr. Know. They also argue that the allegations in the complaint show that Imagine has ample resources to prosecute this suit, by which they are presumably referring to the amounts of money invested by Imagine members in the Dr. Know system. The court finds these to be insufficient grounds for finding a significant disparity between the resources of the parties to the suit such that transfer to another forum is warranted. As a result, this factor is accorded no weight.

### F. The Forum's Familiarity with the Governing Law

Defendants argue that, because Virginia law would apply to the state law claims, the Eastern District of Virginia would be better equipped to apply the law of that state. Plaintiff does

not appear to dispute the assertion that Virginia law would apply, but the court is not entirely persuaded that Virginia law necessarily governs this action. Even assuming, arguendo, that Virginia law would apply, "the 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." Prudential Securities Inc. v. Norcom Development, Inc., No. 97 Civ. 6308, 1998 WL 397889, *6 (S.D.N.Y. July 16, 1998). This is particularly true in a case such as the instant one, which involves rather routine questions of contract law. See Vassallo v. Niedermeyer, 495 F. Supp. 757, 760 (S.D.N.Y., 1980). As a result, this factor weighs only slightly in defendants' favor.

### G.    Trial Efficiency and the Interest of Justice

Defendants suggest that transfer is warranted because the docket of the Eastern District of Virginia is considerably lower than the Eastern District of New York and the median length of time to reach a disposition in a case is significantly lower. Such a difference in docket crowding is a factor the court is entitled to consider in making a transfer decision, see A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 445 (2d Cir. 1966), and this factor weighs in favor of transfer.

### H.    The Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Defendants contend that plaintiff's choice of forum should not be accorded deference because the cause of action is unrelated to the instant forum and plaintiff does not reside in the district. However, defendants understate this

24

district's connections to the instant suit. Moreover, the court is not persuaded that plaintiff's status as a nonresident of this district means that its choice of forum is not entitled to deference. Plaintiff is a Delaware corporation with its principal place of business in New York. (See Compl. ¶ 1.) In deciding a question of forum non conveniens, the Second Circuit held that, even if a plaintiff is a nonresident corporation, its choice of forum is still entitled to deference when motivated by legitimate reasons. See Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001). The court finds this reasoning to be relevant and applicable here. Plaintiff's reasons for choosing this district are clear. Not only are there substantial connections between the instant suit and this district such that venue is proper, but it is also convenient for two of plaintiff's members, one of whom resides in this district. Accordingly, the court grants plaintiff's choice of forum due deference and this factor weighs strongly against transfer.

Having reviewed the various factors relevant to this motion to transfer, the court finds that defendants have failed to make a "clear-cut showing that transfer is in the best interests of the litigation." Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F. Supp 1247, 1253. The primary factors weighing in favor of transfer are the convenience of the parties and the less crowded docket in the Eastern District of Virginia. However, given the closer proximity of this district to the nonparty witnesses and the lack of availability of process to compel the attendance of at least some of them, the court finds that it would not be appropriate to disturb plaintiff's choice of forum.

## CONCLUSION

For the foregoing reasons, the court denies defendants' motion to dismiss or transfer venue. It is further ordered that the parties report to the Honorable Joan M. Azrack, United States Magistrate Judge, to proceed with discovery.

SO ORDERED.

s/ Judge Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: June 28, 2007
      Brooklyn, New York

**SERVICE LIST**

Counsel for Plaintiff

Howard C. Crystal
Novack Burnbaum Crystal, LLP
300 East 42nd Street
New York, NY 10017

Counsel for Defendants

Joseph J. Saltarelli
Hunton & Williams LLP
200 Park Avenue
43rd Floor
New York, NY 10166

cc:    Magistrate Judge Joan M. Azrack